# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABEL P. REYES,<br><br>    Plaintiff,<br><br>    v.<br><br>FLORES,<br><br>    Defendant. | Case No. 1:16-cv-00586-DAD-JLT (PC)<br><br>**ORDER ON PLAINTIFF'S MOTIONS FOR WITNESSES**<br><br>(Docs. 75, 76.)<br><br>30-DAY DEADLINE |

    This action is scheduled for trial commencing on October 29, 2019, in front of the Honorable Dale A. Drozd. Plaintiff seeks to have one incarcerated witness transported to testify at trial and 15 unincarcerated witnesses subpoenaed. The deadline has passed for Defendant's opposition has passed and none has been filed. The motions are deemed submitted. L.R. 230(*l*). As discussed in greater detail below, Plaintiff's motion to have inmate ("IM") Johnny Quezada, CDCR # V42893, transported to testify at the trial in this action, is GRANTED and subpoenas will issue for the United States Marshall service if Plaintiff timely submits money orders for the unincarcerated witness' fees and mileage as outlined below.

**I.    Plaintiff's Allegations**

    Plaintiff proceeds on allegations that, following prostate ("TURP") surgery, he was discharged to the ACH at CSP-Cor on January 23, 2014 with a prescription for medications and

directions from the surgeon for Plaintiff to report to a physician or emergency room if his symptoms returned or worsened. (Doc. 1, p. 16-17.)

Plaintiff next alleges that, on January 26, 2014, at approximately 7:00 a.m., he was pushed in a wheelchair by ADA-worker, IM Quezada, to the clinic to pick up his morning medications at which time he informed Defendant that he was in severe pain in his bladder and kidneys and that he was leaking blood from his penis. (*Id.*, p. 18.) Defendant responded that it was not a medical emergency, that the red on his boxers was not blood but Kool-Aid, and told him to submit a health care services request form to be seen. (*Id.*)

IM Quezada wheeled Plaintiff back to his building where he and the person pushing his wheelchair informed C/O Huewe and the control booth officer that he was in pain and that medical staff were not responsive, to which the control booth officer indicated that he would let Plaintiff go back to medical at noon. (*Id.*) Around 11:30 a.m., IM Quezada wheeled Plaintiff back to the clinic where he was again seen by Defendant and told him of his continuing pain as well as that he was unable to urinate, had thick blood clots come out of his penis, and that he had just had surgery and needed medical attention. (*Id.*, p. 19.) Defendant ignored Plaintiff's pleas. (*Id.*) LVN Hamilton was also present for this exchange but did nothing. (*Id.*)

When IM Quezada and Plaintiff arrived back at Plaintiff's building they again relayed what happened to the control booth officer and C/O Huewe who asked if Plaintiff wanted them to hit the alarm to which Plaintiff responded in the affirmative. (*Id.*) LVN Hamilton and Defendant responded to the alarm and Defendant again stated that it was Kool-Aid, not blood on Plaintiff's boxers and told custody staff that Plaintiff could go back to his cell and wait to see the nurse the next day. (*Id.*, pp. 19-20.) C/O Huewe escorted Plaintiff back to his cell and Plaintiff told him that he was in severe pain, dripping blood clots from his penis, and was unable to urinate, but C/O Huewe responded that medical had already seen Plaintiff, so there was nothing more he could do. (*Id.*, p. 20.)

On third watch, Plaintiff reported his problems to other floor staff officers (not named as defendants) who let him call his mother; she called the hospital where Plaintiff's surgery was performed. (*Id.*, p. 21.) At approximately 3:45 p.m., Plaintiff was seen at the clinic by John Doe

RN, whom Plaintiff told of his surgery, severe pain, and that Plaintiff had used a catheter trying to release his urine, but only blood clots came out. (*Id.*) John Doe RN looked and told Plaintiff he did not see any blood on his penis and told Plaintiff to see a nurse the next day. (*Id.*) When Plaintiff protested and asked John Doe RN "Why not do something now?" John Doe RN simply responded, "I'm done." (*Id.*) When he returned to his cell, Plaintiff again called his mother and eventually a nurse from the hospital called CSP-Cor and told medical staff that Plaintiff was having a medical emergency which resulted in his return to the hospital at approximately 10:00 that evening. (*Id.*, pp. 21-22.)

## II. <u>Discussion and Analysis</u>

In determining whether to grant Plaintiff's motions for the attendance of his proposed witnesses, factors to be taken into consideration include (1) whether the inmate's presence will substantially further resolution of the case, (2) the security risks presented by the inmate's presence, (3) the expense of transportation and security, and (4) whether the suit can be stayed until the inmate is released without prejudice to the cause asserted. *Wiggins v. County of Alameda*, 717 F.2d 466, 468 n.1 (9th Cir. 1983); *see also Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994) (district court did not abuse its discretion when it concluded the inconvenience and expense of transporting inmate witness outweighed any benefit he could provide where the importance of the witness's testimony could not be determined), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

### A. **Incarcerated Witnesses**

Plaintiff seeks to have IM Quezada, his ADA-worker, transported to testify at the trial of this action. Plaintiff must show that IM Quezada's anticipated testimony will substantially further resolution of the case, which as stated in the Second Scheduling Order, requires showing IM Quezada is willing to testify and has actual knowledge of relevant facts. (Doc. 59, pp. 2-3.) Plaintiff submitted an affidavit from IM Quezada which confirms that IM Quezada is willing to testify and was present for the encounters between Plaintiff and Defendant which form the basis of this action. (Doc. 76, pp. 6-7.) IM Quezada's presence will substantially further the resolution of the case and Plaintiff's motion as to this witness will be granted.

**B.      Unincarcerated Witnesses**

Plaintiff seeks to subpoena 15 unincarcerated witnesses for trial. As stated in the Second Scheduling Order, (Doc. 59), Plaintiff must deposit a money order payable to each witness for the full amount of fees and mileage for that witnesses before a subpoena will issue. The witness fee is $40.00 per day[1] and mileage is set at $0.58 per mile.[2] Because no statute authorizes the use of public funds for these expenses in civil cases, the tendering of witness fees and travel expenses is required even though Plaintiff was granted leave to proceed *in forma pauperis*. If Plaintiff fails to submit the required money orders, no subpoenas will issue and these witnesses will not be served by the United States Marshal. If Plaintiff decides he only desires some, but not all, of the below witnesses for trial, he only need submit money orders in the sums delineated below that correspond with the witness(es) he desires to be subpoenaed. It is Plaintiff's responsibility to correctly spell and identify the individuals for service by the United States Marshal.

**1.      CSP-Corcoran**

Plaintiff seeks to subpoena the following individuals whose address he lists as CSP-Cor, 4001 King Avenue, Corcoran, CA 93212:

1.  B. Whitfield, ("LVN"), Licensed Vocational Nurse
2.  G. Andrade, ("SRN II"), Supervising Registered Nurse II
3.  S. Macelvaine, ("SRN III"), Supervising Registered Nurse III
4.  Teresa Macias, ("CEO"), Chief Executive Officer
5.  Alford, Correctional Officer 2/W
6.  J. Huewe, Correctional Officer 2/W
7.  E. Cortez, Correctional Officer 3/W
8.  Julian Kim, "Medical Doctor", (CTC)

The round-trip mileage from CSP-Cor to the United States District Court in Fresno, CA is 110 miles. At $0.58/mile, the total mileage fee for each of the above witnesses is $63.80. Each of these individuals is also entitled to a $40.00 daily witness fee. Therefore, Plaintiff must submit 8

---
[1] *See* 28 U.S.C. § 1821.
[2] *See* http://www.gsa.gov/portal/content/100715.

4

separate money orders in the amount of $103.80, payable to each of these individuals from CSP-Cor before they may be subpoenaed for trial.

**2.      Delano Regional Hospital**

Plaintiff seeks to subpoena the following individuals whose address he lists as Delano Regional Hospital, 1401 Garces Highway, Delano, CA 93215:

1.      Miss Campbell, ("RN"), Registered Nurse

2.      Anthony H. Horan, "Urologist Surgeon"

The round-trip mileage from Delano Regional Hospital to the United States District Court in Fresno, CA is 156 miles. At $0.58/mile, the total mileage fee for each of these witnesses is $90.48. The witnesses are also entitled to a $40.00 daily witness fee. Therefore, Plaintiff must submit 2 separate money orders in the amount of $130.48, payable to each of individuals from Delano Regional Hospital before they may be subpoenaed for trial.

**3.      Mercy Hospital**

Plaintiff seeks to subpoena the following individuals whose address he lists as Mercy Hospital, 2215 Truxtun Ave., Bakersfield, CA 93301:

1.      Jaber Noor, "Medical Doctor", (CHW Central California)

2.      Mushtaq Ahmed, "Medical Doctor"

3.      Snyder, Alissa K. "MD

The round-trip mileage from Mercy Hospital to the United States District Court in Fresno, CA is 218 miles. At $0.58/mile, the total mileage fee for each of these witnesses is $126.44. The witnesses are also entitled to a $40.00 daily witness fee. Therefore, Plaintiff must submit 3 separate money orders in the amount of $166.44, payable to each of individuals from Mercy Hospital before they may be subpoenaed for trial.

**4.      Twin Cities Community Hospital**

Plaintiff seeks to subpoena "Perkin Hugh, 'Medical Doctor,'" whose address he lists as Twin Cities Community Hospital, 1100 Las Tables Rd., Templeton, CA 93465. The round-trip mileage from Twin Cities Community Hospital to the United States District Court in Fresno, CA is 232 miles. At $0.58/mile, the total mileage fee for this witness is $174.56. The witness is also

entitled to a $40.00 daily witness fee. Therefore, Plaintiff must submit a money order in the amount of $174.56, payable to this witness before he will be subpoenaed for trial.

### 5. San Joaquin Community Hospital

Plaintiff seeks to subpoena "Ziomek, M.D., John J. ED, Physician" whose address he lists as San Joaquin Community Hospital, 2615 Chester Ave., Bakersfield, CA 93301. The round-trip mileage from San Joaquin Community Hospital to the United States District Court in Fresno, CA is 218 miles. At $0.58/mile, the total mileage fee for this witness is $126.44. The witness is also entitled to a $40.00 daily witness fee. Therefore, Plaintiff must submit a money order in the amount of $166.44, payable to this witness before he will be subpoenaed for trial.

## III. Order

Based on the foregoing, Plaintiff has made a sufficient showing to warrant making inmate Johnny Quezada, CDCR # V42893, available to testify at trial. Accordingly, his motion for the attendance of incarcerated witnesses is **GRANTED**. At the appropriate time, the Court will issue a separate *writ of habeas corpus ad testificandum* to secure Mr. Quezada's attendance. Additionally, if Plaintiff wishes to subpoena the unincarcerated witnesses, he must submit money orders in the amounts stated above **within 30 days of the date of service of this order**.

IT IS SO ORDERED.

Dated: **July 28, 2019**     **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE